**2015-1488**

# United States Court of Appeals
# for the Federal Circuit

PENTAIR WATER POOL AND SPA, INC.,

*Plaintiff-Appellee,*

v.

HAYWARD INDUSTRIES, INC., HAYWARD POOL PRODUCTS, INC.,

*Defendants-Appellants.*

*Appeal from the United States District Court for the Central District of California in Case No. 2:11-CV-10280, Judge George H. Wu*

**NON-CONFIDENTIAL REPLY BRIEF OF DEFENDANTS-APPELLANTS HAYWARD INDUSTRIES, INC., HAYWARD POOL PRODUCTS, INC.**

Lee Carl Bromberg
Lori Jane Shyavitz
Keith E. Toms
Amy J. Tindell
McCARTER & ENGLISH, LLP
265 Franklin St.
Boston, MA  02110
Tel: (617) 449-6500
lbromberg@mccarter.com
lshyavitz@mccarter.com
ktoms@mccarter.com
atindell@mccarter.com

Scott S. Christie
Matthew A. Sklar
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ  07102
Tel: (973) 622-4444
Fax: (973) 624-7070
schristie@mccarter.com
msklar@mccarter.com

*Counsel for Defendants-Appellants*
*Hayward Industries, Inc. and Hayward Pool Products, Inc.*

August 3, 2015

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................2

I.    THE ASSERTED CLAIMS MEET THE WRITTEN DESCRIPTION
      REQUIREMENT.........................................................................2

      A.    The Tubesheet Of The Asserted Claims Is Fully Disclosed ................2

            1.    The '692 Application Described Tubesheets Without Limitation
                  as to Materials in 1995 ................................................................3

            2.    The Specification and Claims of the '804 Patent Disclose a
                  Tubesheet Without Restriction of Material ..............................5

            3.    Pentair's Essential Element and Disavowal Arguments Fail as a
                  Matter of Law.........................................................................8

                  a.    No Essential Element........................................................8

                  b.    No Express Disavowal....................................................10

      B.    The Remaining Contested Claim Elements Are Fully Disclosed.......12

            1.    The '804 Patent Adequately Discloses the Innovation in the
                  Genus of Pool Heaters ..............................................................12

            2.    "At Least One Tubesheet," "A Plastic Header" and No Parallel
                  Configuration Requirement ....................................................14

            3.    "A Burner Unit Disposed Proximate To The Combustion
                  Chamber," "A Heat Exchanger In Communication With The
                  Combustion Chamber" and "A Heat Exchanger Disposed
                  Substantially Within The Housing".........................................15

            4.    The "Present Invention" Does Not Limit Claim Scope to Figure
                  2, An Exemplary Embodiment .................................................16

i

II.    THE DISTRICT COURT MISTAKENLY GRANTED SUMMARY JUDGMENT OF NON-INFRINGEMENT OF CLAIM 46 DISREGARDING EVIDENCE FAVORABLE TO HAYWARD AND MISINTERPRETING INFRINGEMENT CONTENTIONS ......................17

III.   THE ACCUSED PRODUCTS INFRINGE THE COMBUSTION CHAMBER LIMITATIONS..........................................................................22

       A.    The District Court Correctly Construed Combustion Chamber .........22

       B.    The Accused Products Have A Combustion Chamber Under Any Construction ...........................................................................................24

IV.    THE "APERTURE" AND "SPACED CONDUITS" LIMITATIONS ARE INFRINGED................................................................................................26

       A.    The Accused Products Infringe The Aperture Limitation .................26

       B.    The Accused Products Have Spaced Conduits ...................................28

V.     THE DISTRICT COURT INCORRECTLY BARRED PRE-SUIT DAMAGES UNDER THE MARKING STATUTE.....................................30

VI.    THE DISTRICT COURT'S FINDING OF NO WILLFUL INFRINGEMENT SHOULD BE REVERSED ...........................................32

CONCLUSION................................................................................................33

CERTIFICATE OF SERVICE .......................................................................34

CERTIFICATE OF COMPLIANCE...............................................................36

**CONFIDENTIAL MATERIAL OMITTED**

The material redacted from this brief on pages 16, 20-22, 24-25, 27 and 32 relates to testimony of Appellee's experts and witnesses, which was filed under seal pursuant to the protective order entered by the District Court, A1, that relates to relevant characteristics of the Accused Products.

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
   659 F.3d 1121 (Fed. Cir. 2011) ..........................................................................16

*Altair Eng'g, Inc. v. LEDdynamics, Inc.*,
   413 F. App'x 251 (Fed. Cir. 2011) ..............................................................18, 19

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
   6 F.3d 1523 (Fed. Cir. 1993) ...............................................................................31

*AntiCancer, Inc. v. Pfizer, Inc.*,
   769 F.3d 1323 (Fed. Cir. 2014) ..........................................................................19

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
   598 F.3d 1336 (Fed Cir. 2010) (*en banc*) ............................................................3

*August Tech. Corp. v. Camtek, Ltd.*,
   655 F.3d 1278 (Fed. Cir. 2011) ..........................................................................17

*Bilstad v. Wakalopulos*,
   386 F.3d 1116 (Fed. Cir. 2004) ..........................................................................13

*Cloud Farm Assocs., L.P. v. Volkswagen Grp. of Am., Inc.*,
   No. CA 10-502-LPS, 2012 WL 3069390 (D. Del. July 27, 2012)....................32

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*,
   291 F.3d 1317 (Fed. Cir. 2002) .........................................................................8, 9

*Creative Integrated Sys., Inc. v. Nintendo of Am., Inc.*,
   526 F. App'x 927 (Fed. Cir. 2013) ...........................................................7, 11, 17

*Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*,
   635 F.3d 1373 (Fed. Cir. 2011) .............................................................................7

*Epistar Corp. v. Int'l Trade Comm'n*,
   566 F.3d 1321 (Fed. Cir. 2009) ...........................................................10, 11, 17

*Gentry Gallery, Inc. v. Berkline Corp.*,
   134 F.3d 1473 (Fed. Cir. 1998) .............................................................................9

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
  558 F.3d 1368 (Fed. Cir. 2009) ..........................................................9

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
  628 F.3d 1359 (Fed. Cir. 2010) .......................................................20

*Metrologic Instruments, Inc. v. PSC, Inc.*,
  No. 99-4876, 2004 WL 2851955 (D.N.J. Dec. 13, 2004) ...................31

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006) .......................................................19

*Potter Voice Techs., LLC v. Apple Inc.*,
  24 F. Supp. 3d 882 (N.D. Cal. 2014)................................................32

*Rambus, Inc. v. Infineon Techs., AG*,
  318 F.3d 1081 (Fed. Cir. 2003) .......................................................16

*Reiffin v. Microsoft Corp.*,
  214 F.3d 1342 (Fed. Cir. 2000) (Newman, J., concurring) .................8

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
  563 F.3d 1358 (Fed. Cir. 2009) .........................................................7

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
  620 F.3d 1305 (Fed. Cir. 2010) .......................................................10

*Tobinick v. Olmarker*,
  753 F.3d 1220 (Fed. Cir. 2014) .......................................................16

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) ...................................................27-28

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
  200 F.3d 795 (Fed. Cir. 1999) ........................................................29

*Voda v. Cordis Corp.*,
  536 F.3d 1311 (Fed. Cir. 2008) .......................................................16

# INTRODUCTION

The District Court's summary judgment ruling of inadequate written description must be reversed given the full disclosure of a tubesheet without restriction as to material composition, raising at least a disputed issue of material fact.  Hayward Industries, Inc. and Hayward Pool Products, Inc. ("Hayward") demonstrated in their Principal Brief ("HBr.") that "at least one tubesheet" in claims 43-45 and 47 of U.S. Patent No. 6,026,804 (the "'804 patent") is fully disclosed.  HBr., 29-46.  Pentair Water Pool and Spa, Inc. ("Pentair") in its Answering Brief ("PBr.") offers only attorney argument to the contrary.  Rather, Pentair admits that original claim 29 in the '804 patent's parent application, from its filing in 1995, discloses a tubesheet without restriction as to material composition. PBr., 26.

The District Court also improvidently granted summary judgment of non-infringement of claim 46 by ignoring substantial evidence that the Accused Products have a "corrosion resistant" tubesheet, which created at least a material dispute of fact.  Hayward is entitled to present its evidence at trial that the carbon steel tubesheet of the Accused Products is indeed corrosion resistant, as its expert testified, and as Pentair's witnesses acknowledged.

The District Court further erred in finding a disputed issue as to whether Pentair's heaters have a "combustion chamber," despite admissions that they do,

1

and denying summary judgment of infringement of claim 43 on that basis. Pentair's tortured arguments notwithstanding, its heaters have a combustion chamber and spaced conduits that are "proximate to" and "in communication with" the tubesheet apertures.

The District Court's damages limitation based on lack of marking improperly decided a disputed issue of fact.  Likewise, the District Court's summary judgment determination of no willful infringement is based on its erroneous lack of written description ruling, and thus should be rejected.

Accordingly, this Court should reverse the District Court's judgments to the extent they are adverse to Hayward and remand for further proceedings.

## ARGUMENT

## I.    THE ASSERTED CLAIMS MEET THE WRITTEN DESCRIPTION REQUIREMENT

### A.    The Tubesheet Of The Asserted Claims Is Fully Disclosed

The claim limitation "at least one tubesheet" in claims 43-45 and 47 is fully disclosed in the '804 patent without restriction on the tubesheet material, and thus the District Court's ruling of inadequate written description must be reversed.  This disclosure has been consistent since the 1995 filing of the '804 patent's parent Application No. 08/579,692 (the "'692 application").  Pentair's arguments to the contrary are meritless and contravene this Court's precedent because the '804

2

patent neither requires any essential element nor contains a manifest disavowal of any tubesheet material.

Pentair acknowledges that the disclosure must be viewed "from the perspective of a person of ordinary skill in the art [("POSA")]." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed Cir. 2010) (*en banc*). The undisputed evidence established that a POSA understood that a variety of metals were appropriate for tubesheets that "unif[ied] the tubes into an integrated assembly." A18266, 197:7-9; A16892 ¶ 54; A11239, 1:32-37. The District Court ignored the perspective of the POSA and overlooked this evidence to reach the erroneous conclusion that the claims omitted a limitation from the preferred embodiment, namely a "corrosion resistant" tubesheet. This backwards approach mandates reversal of the invalidity determination as a matter of law.

### 1. The '692 Application Described Tubesheets Without Limitation as to Materials in 1995

Original claim 29 in the parent '692 application, filed December 28, 1995, covers "a pair of spaced, parallel endplates" with no requirement that they be made of any particular material. A11837. Indeed, stainless steel was not mentioned in the '692 application, which did not yet include the alternative tubesheet of Figure 7. A11817-46. Thus, from the start, this application disclosed tubesheets of any

3

appropriate material known to the POSA, and further disclosed a plastic header. *See Ariad*, 598 F.3d at 1349.

The POSA was aware that heat exchangers and their tubesheets could be made of metal. *See* A123, 1:29; A124, 3:35-37; A125, 6:34-37; A126, 7:31-32; A127, 9:9-13. The prior art, which evidences the POSA's understanding, shows tubesheets made of cast iron, steel, brass, copper, aluminum and stainless steel. A18266, 197:7-9; A16892 ¶ 54; A11239, 1:32-37. Pentair acknowledges that original claim 29 does not limit the material from which the tubesheet is made, PBr., 26, admits that the "description of Fig. 2 … does not identify materials for [the tubesheet]," PBr., 30, and therefore concedes disclosure of the "at least one tubesheet" of claims 43-45 and 47.

Moreover, contrary to Pentair's argument, the application from which the '804 patent issued, Application No. 08/801,077 (the "'077 application"), did not limit the '692 application's broad disclosure of tubesheets without a restriction on material composition, which is reproduced verbatim in the '077 application. *Compare* A7650, 7-9 *with* A125, 6:34-35. Rather, the '077 application included *additional* disclosure of the *alternative* tubesheet embodiment made of a thin sheet of stainless steel depicted in Figure 7, which expands, rather than narrows, the tubesheet disclosure. *See* A126, 8:29-32. Pentair admits there is no restriction on tubesheet material in asserted claims 43-45 and 47, PBr., 21, and that both original

4

claim 29 and the description of Figure 2 in the specification provide this disclosure.  PBr., 26, 30.

### 2.    The Specification and Claims of the '804 Patent Disclose a Tubesheet Without Restriction of Material

The specification of the '804 patent provides full disclosure that heat exchangers and their components, including tubesheets and prior art headers, have been made of metal.  A123, 1:29; A124, 3:35-37; A125, 6:34-37; A126, 7:31-32, 8:39-43; A127, 9:9-10, 9:13.  The POSA would be familiar with the metals that were commonly used, including cast iron, copper, steel, stainless steel, brass, and aluminum, having been disclosed in the specification, and taught, *e.g.*, in the McElwain prior art patent.  A11236; A11239, 1:33-35.  Heat exchangers, which must withstand high temperatures, have been made of metal for over one hundred years.  The '804 patent shows the use of plastic for the header, not previously thought possible in a high temperature fuel fired heater.  Thus, the POSA reading the '804 patent specification would readily understand that the tubesheet, must be made of metal (not, *e.g.*, cardboard or plastic) and would be familiar with the various metals that had been employed for decades.  *See* A18266, 197:7-9.  Pentair presents no evidence to contradict the disclosures of the specification, the plain claim language, the prior art, or the understanding of the POSA that "at least one tubesheet" in claims 43-45 and 47 can be made of a variety of metals.

5

Pentair offers only misguided attorney argument, some of which precipitated the errors of the District Court.  For example, Pentair's repeated insistence that the '804 patent requires a stainless steel tubesheet contradicts the text of the '804 patent itself, which introduces the stainless steel embodiment as an *alternative* embodiment.  A126, 8:29-30 (emphasis added).  Figure 7 introduces the alternative tubesheet for the first time:

> Fig. 7 shows an alternative tubesheet (endplate) 108 for receiving the tubes 70 of the heat exchanger.  Of course, a pair of tubesheets 108 would be required  for  the  embodiment shown in Fig. 2.[1]  The tubesheet 108 is preferably formed from a thin plate or sheet of stainless steel, e.g., 0.188" and includes punched orifices 110 for receiving the mating shaft of suitable bolts or studs used for holding headers 76, 78 in sealing engagement with the tube sheets.

A126, 8:29-36.  With flanges added in Figure 8, "a thin sheet … provide[s] an equivalent tube contact area as a thick plate."  A126, 8:52-53.  Accordingly, the specification proposes a thin sheet of stainless steel as an alternative tubesheet to the thick plates depicted in Figures 2 and 5, where Pentair admits there is no requirement for any particular metal.  PBr., 30.

The District Court mistakenly determined that "preferably" refers only to the *width* of the thin stainless steel tubesheet, not to the newly introduced material itself, completely ignoring the explicit reference to an alternative tubesheet at the

---

[1] This passage also supports disclosure of "at least one tubesheet," discussed below.

6

beginning of the paragraph, overlooking the context of the discussion of stainless steel as an alternative embodiment for the tubesheet. In a similar vein, Hayward made no "misrepresentation" in pointing out the specification's teaching that copper tubes can be soldered or welded to a tubesheet — just not to a *stainless steel* tubesheet — which necessarily implies contemplation of tubesheets made from other materials. A126, 8:39-64.

The unasserted claims of the '804 patent further reinforce the disclosure. *See, e.g.*, *Creative Integrated Sys., Inc. v. Nintendo of Am., Inc.*, 526 F. App'x 927, 932-33 (Fed. Cir. 2013). Each claim is not required to disclose all features of the invention or all advantages over prior art. *See Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1381 (Fed. Cir. 2011); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1367 (Fed. Cir. 2009). Thus, claims 1-21 specify "stainless steel tubesheets" in contrast to asserted claims 43-45 and 47, which do not have that restriction. A127, 9:39-A128, 11:12. In further contrast, claim 22 does not require a tubesheet at all, but instead covers merely "a heat exchanger" without further characterization. A128, 11:13-43. Indeed, claims 23-25 and 35-42 mandate simply "endplates" (*i.e.*, tubesheets), without restriction on material composition, just as in original claim 29 and in the asserted claims 43-45 and 47. A128, 11:44-A129, 13:23; A129, 14:29-A130, 15:34; A130, 15:35-16:40; A7661. Claim differentiation, particularly as evidenced

7

by claims 1-21 which specify "stainless steel" for the tubesheet, underscores the non-restriction of tubesheet material in the asserted claims.

### 3.    Pentair's Essential Element and Disavowal Arguments Fail as a Matter of Law

#### a.    No Essential Element

There is no merit to Pentair's argument in support of the District Court's error that tubesheets "made from stainless steel or other corrosion-resistant material" is an essential element of the asserted claims.    A18.29; PBr., 21.[2] "[T]here is no legally recognizable or protected 'essential' element, 'gist' or 'heart' of the invention in a combination patent." *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1322 (Fed. Cir. 2002) (citations omitted). Similarly, there is no "omitted element test." *Reiffin v. Microsoft Corp.,* 214 F.3d 1342, 1347 (Fed. Cir. 2000) (Newman, J., concurring).    The "claims need not include every component that is described in the specification;" in other words, nothing "requires that the claim contain all the elements described in the specification as ... new ...." *Id.* at 1347-48.    In the '804 patent specification, the tubesheet discussion of Figure 2 (which dates back to the '692 application) identifies the tubesheets (endplates) solely with reference to their function of "unifying the tubes into an integrated assembly," A125, 6:37, and, as Pentair

---

[2] Pentair's kitchen sink approach below asserted at least six more "essential elements," but was rejected by the District Court.

admits, "does not identify materials for … the tubesheets …." PBr., 30. This admission is dispositive on the issue that the tubesheet is not restricted to a particular metal.

Accordingly, *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998) and *ICU Medical, Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368 (Fed. Cir. 2009) do not apply here. In *Gentry Gallery*, the specification explicitly required a single location for the reclining sofa controls. 134 F.3d at 1478-79. Likewise, in *ICU Medical*, the internal spike of the valve was the only method disclosed to create a fluid pathway. 558 F.3d at 1378-79. In both cases, the disclosure was limited because a POSA reading the patent would not understand that working alternatives were possible. Here, in contrast, various tubesheet configurations are disclosed in Figures 2, 5 and 7, and various metals appropriate for heat exchangers and their tubesheets are disclosed and well-understood by the POSA. Thus, unlike *Gentry Gallery* and *ICU Medical*, where the specifications explicitly required a particular structure as necessary for the invention, the specification here provides no basis for the District Court's restriction of the "at least one tubesheet" to a tubesheet made of a corrosion resistant material. *See Cooper Cameron*, 291 F.3d at 1322 ("there is no legally recognizable or protected 'essential' element, 'gist' or 'heart' of the invention").

### b.    No Express Disavowal

Neither is there any merit to Pentair's argument of disavowal. "Disavowal requires 'expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.'" *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1335 (Fed. Cir. 2009) (citation omitted). General statements about the difficulties and failures in the prior art, without more, do not act to disclaim claim scope. *Id.*; *see also Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1315 (Fed. Cir. 2010) ("particularly difficult" structure did not disavow structure).

Here Pentair asserts that corrosion resistant material is "required" for the tubesheet, but cites nothing in the specification or the file history that expresses a disavowal of any material for that tubesheet. Pentair repeatedly asserts that the '804 patent "disparages … cast iron," PBr., 20, but the specification does not explicitly disavow cast iron for tubesheets. Rather, the specification states that cast iron may be used for "economic reasons" despite certain disadvantages, including its susceptibility to corrosion. A127, 9:18-27. This is no manifest disclaimer. Instead, it is an explicit disclosure of cast iron as a metal that has been, and can be, used in heat exchangers coupled with an acknowledgement as to its benefits and detriments. As noted in *Epistar*, "disparaging comments alone do not necessarily

10

show a manifest or express disavowal of the criticized subject matter." 566 F.3d at 1336.

Use of the phrase "the present invention" also does not constitute a disclaimer. While such "[s]tatements that describe the invention as a whole … are more likely to support a limiting definition of a claim term[,] … this principle has no application where, as here, the other statements and illustrations make it clear that the limitations *do not* describe the invention as a whole." *Creative*, 526 F. App'x at 933 (citation omitted). The '804 patent as a whole, as well as the '692 application, describe various metals appropriate for tubesheets, and different configurations of the heater that represent advantages over prior art. Indeed, much of the relevant disclosure for Figure 2 is unchanged from the '692 application before the alternative stainless steel embodiment was added. *Compare, e.g.*, A125, 6:30-39 *with* A7650, 4-10; A125-26, 6:54-7:4 *with* A7550, 10-51, 1. Thus, the disclosure of the asserted claims should not be limited to only particular embodiments that follow the phrase "the invention." *See, e.g.*, *Creative*, 526 F. App'x at 933 (no claim limitation where references to "the invention" disclosed different improvements).

Thus, the asserted claims of the '804 patent are fully supported by the written description, and the District Court's ruling of invalidity should accordingly be reversed.

11

**B.     The Remaining Contested Claim Elements Are Fully Disclosed**

Pentair's legally incorrect argument that the asserted claims of the '804 patent are constrained by the embodiment shown in Figure 2 was properly rejected by the District Court.   In a "kitchen sink" approach that conflated claim construction and written description arguments and ignored this Court's mandate that a patent's disclosure must be viewed from the perspective of a POSA, Pentair argues that there were no fewer than six additional "essential elements" missing from the asserted claims.   The District Court, however, properly denied summary judgment of inadequate written description, A18.31-32; A16884-94, because a POSA would understand that Hayward possessed the claimed invention for the highly predictable genus of pool heaters and because each of the six elements is adequately disclosed.   Thus, the District Court's denial of summary judgment of inadequate written description for these elements should be upheld.

**1.     The '804 Patent Adequately Discloses the Innovation in the Genus of Pool Heaters**

In the highly predictable field of pool heaters, the detailed description of the '804 patent's innovations in the context of an exemplary "traditional, parallel tube heat exchanger" is sufficient to show that Hayward possessed the invention for the genus of "pool heaters," including the known and understood coil-type configuration of the MasterTemp and Max-E-Therm heaters.   A16893-94 ¶¶ 56-58.

12

Indeed, the specification not only teaches that "many variations on the above described heat exchanger have been proposed …," A123, 1:49-50, but also that the embodiments are exemplary and that a POSA "may make many variations and modifications without departing from the spirit and scope of the invention."  A127 9:33-37.

There is adequate written description because the differences between heat exchanger configurations are predictable enough that a POSA readily would understand that other members of the genus would perform similarly to the disclosed straight tube heat exchanger.   A16886-87 ¶¶ 36-37; *see Bilstad v. Wakalopulos*, 386 F.3d 1116, 1125-26 (Fed. Cir. 2004).  The coil-type heater of the MasterTemp and Max-E-Therm heaters was a well understood variant to the traditional straight tube heat exchanger.   A16888-89; A16893-94 ¶ 56; A11206; A15646, 115:15-22.   As Dr. Clark testified, a POSA would understand that the innovations of the '804 patent would readily and predictably apply to a coil-type heater.   A16893-94 ¶¶ 56-58.   In view of this evidence, uncontested by Pentair, there is at the least a disputed issue of fact warranting the denial of summary judgment.

13

## 2. "At Least One Tubesheet," "A Plastic Header" and No Parallel Configuration Requirement

The written disclosure of the '804 patent sufficiently conveys to the POSA that the inventors had possession of the claimed "at least one tubesheet," A130 16:5 (Claim 43), 28 (Claim 47), and "a plastic header." A130. The POSA would readily understand that the described plastic header invention would apply predictably to the well-known single-header/tubesheet configurations. For example, Figure 7 shows a single tubesheet and is described as an alternative to exemplary embodiment to Figure 2. A124, 4:25-26. While the patent notes "a pair of tubesheets 108 would be required for the embodiment shown in FIG. 2," A126, 8:29-32, it teaches that Figure 2 is merely exemplary, A127, 9:34-38, and that other heat exchanger configurations are available. A123, 1:49-56. Thus, the POSA would understand that Hayward possessed the invention generally across pool heaters.

The tubesheet of Figure 7 is in a "sealing engagement" with the header. A126 at 8:32-36. Original claim 29 in the parent '692 application states that the header is "removably attached" to the endplate. A11837. Thus, because the specification plainly discloses a heat exchanger with a single tubesheet attached to a header, it also discloses a single header. Original claim 29 also calls for a front

header "being composed of plastic." *Id.* Thus, from the day in 1995 that the '692 application was filed, it fully disclosed a plastic header.

The specification also supports Dr. Clark's testimony that a heat exchanger having a single tubesheet/header design is well-known in the art and, thus, well understood by the POSA. A16889 ¶ 45 (shell and U-tube heat exchanger has been known for decades). For example, the specification references U.S. Patent Nos. 5,216,743 to Seitz and 3,489,209 to Johnson, prior art that discloses heat exchangers with single tubesheet/header designs. A123, 2:19-26; A9847-61; A11204-10.

No "parallel tubesheet" limitation is contained in the asserted claims 43-47, in contrast to certain differentiated, unasserted claims, *e.g.*, claims 1-15, 18-21. A127-28. Because the specification supports a single tubesheet/header design, claims without a parallel tubesheet limitation are fully supported as well.

### 3.    "A Burner Unit Disposed Proximate To The Combustion Chamber," "A Heat Exchanger In Communication With The Combustion Chamber" and "A Heat Exchanger Disposed Substantially Within The Housing"

Figure 2 of the '804 patent expressly discloses an embodiment where (1) the burner unit is disposed proximate to the combustion chamber, (2) the heat exchanger is in communication with the combustion chamber and (3) the heat

*CONFIDENTIAL MATERIAL REDACTED*

exchanger is at least partially within the housing.  Figure 2 thus shows a POSA that the inventors were in possession of these claimed configurations.

As Dr. Clark testified, variations in heater structure were predictable and well understood by a POSA, as evidenced by the prior art.  A16893 ¶ 56 (referencing U.S. Patent No. 4,344,386 to Black, which discloses a "downwardly directed burner").  ███████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████ *Id.*; *see also Tobinick v. Olmarker*, 753 F.3d 1220, 1226 (Fed. Cir. 2014).

### 4. The "Present Invention" Does Not Limit Claim Scope to Figure 2, An Exemplary Embodiment

This Court has rejected the simplistic rule that references to the "present invention" automatically limit a patent's claim scope.  The "phrase 'present invention' does not limit the scope of the entire invention, such as here "where references … are not uniform, or where other portions of the intrinsic evidence do not support applying the limitation to the entire patent." *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1136 (Fed. Cir. 2011); *Voda v. Cordis Corp.*, 536 F.3d 1311, 1320-22 (Fed. Cir. 2008); *Rambus Inc. v. Infineon Techs., AG*, 318 F.3d 1081, 1094-95 (Fed. Cir. 2003) ("present invention" statements not limiting because "the remainder of the specification and the prosecution history shows that

16

[plaintiff] did not clearly disclaim or disavow such claim scope in this case"). Nor must every claim cover every embodiment, as Pentair suggests. *August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1285 (Fed. Cir. 2011).

As set forth in Section A(3)(b), *supra*, disavowal of claim scope requires "'expressions of manifest exclusion or restriction'" and must be clearly stated. *Epistar*, 566 F.3d at 1335 (citation omitted). Here there can be no disavowal because the "present invention" as identified in the specification refers to multiple embodiments. *Creative*, 526 F. App'x at 933-34 ("each of these 'inventions' embodies a different improvement"). In particular, the "present invention" refers to Figure 2 as well as Figure 7, which shows "an alternative embodiment of the present invention." A124, 4:25-26; A19930 (admitting alternate embodiments). Notably, Figure 7 does not contain any of the so-called limitations of the "present invention" relied upon by Pentair. Thus, it is clear from the entirety of the specification that the phrase "present invention" does not disclaim or disavow any claim scope for the asserted claims.

## II.   THE DISTRICT COURT MISTAKENLY GRANTED SUMMARY JUDGMENT OF NON-INFRINGEMENT OF CLAIM 46 DISREGARDING EVIDENCE FAVORABLE TO HAYWARD AND MISINTERPRETING INFRINGEMENT CONTENTIONS

The District Court erred in concluding that claim 46 was not infringed on the basis that the carbon steel tubesheets of the Accused Products are not "corrosion

resistant material." In fact, the specification of the '804 patent and the testimony of both Hayward's and Pentair's witnesses established that a carbon steel tubesheet meets this limitation. *See* HBr., 52-55. Accordingly, had the District Court viewed the evidence favorably to Hayward, it would have found at least a material dispute of fact to deny summary judgment.

Furthermore, the District Court improperly prevented Hayward from pursuing its infringement position as to claim 46. Hayward has consistently identified the structure of each of the Accused Products that meets the "corrosion-resistance" limitation, but mistakenly (and in a parenthetical) merely referenced *the wrong composite of steel*. Pentair does not dispute that such a discrepancy is an understandable oversight given that stainless steel tubesheets are prevalent and visually indistinguishable from new carbon steel tubesheets. Pentair also makes no claim of surprise, having long known that the tubesheets of its own products were carbon steel. Pentair likewise cannot articulate any prejudice purportedly identified by the District Court. While it would have been preferable for Hayward to amend its infringement contentions, its failure to do so as to such a minor matter does not justify the District Court foreclosing Hayward from pursing infringement as to claim 46.

Implicitly conceding the persuasive value of *Altair Engineering, Inc. v. LEDdynamics, Inc.*, 413 F. App'x 251 (Fed. Cir. 2011), Pentair offers no basis for

18

distinction because the circumstances are virtually identical to those present here. *See* PBr., 49-51.  Like in *Altair* (1) neither party disputed that the tubesheets of the Accused Products were made from carbon steel, *see* A18.19-18.20, (2) Hayward did not prevail earlier in the case by arguing that these tubesheets were made from stainless steel, and (3) allowing Hayward to accurately describe the tubesheet material provided Hayward no strategic advantage and caused no harm to Pentair. Given *Altair*, the District Court's refusal to allow Hayward to accurately reference the type of tubesheet steel, where there was absolutely no prejudice to Pentair, constitutes at the very least an abuse of discretion.[3]

Furthermore, Pentair willingly embraces the District Court's clear error in determining that the "corrosion-resistance" limitation can be satisfied only by a

---

[3] Pentair attempts to distinguish *Altair* only on the basis that "this is not a judicial estoppel case reviewed *de novo*," suggesting that Hayward is improperly advocating for a *de novo* standard of review here.  PBr. 49, n.13.  Hayward never contended that this necessarily is a judicial estoppel case, but the similarities are clear insofar as the District Court prohibited Hayward from pursuing its infringement position because it "differs unacceptably from that presented in its infringement contentions."  A18.20.  While *Altair* suggests that this case easily could be considered a judicial estoppel case, the appropriate standard of review is no less demanding than abuse of discretion, as opposed to Pentair's imaginative "very deferential."  *See AntiCancer, Inc. v. Pfizer, Inc.,* 769 F.3d 1323, 1328 (Fed. Cir. 2014); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 467 F.3d 1355, 1366-67, 1369 (Fed. Cir. 2006).

19

CONFIDENTIAL MATERIAL REDACTED

material that is impervious to corrosion or corrosion proof.[4]  *See* A18.20-A18.21.

In doing so, Pentair disregards the undisputed testimony of Dr. Clark that a

"corrosion-resistant" component is functionally unaffected by the adverse effects

of corrosion for its expected useful life, despite any actual accumulation of

corrosion.  *See* A16909-11 ¶¶ 97-102.  This is not a "new 'function-as-intended'

theory."  PBr., 48.  Rather, it is the uncontroverted opinion of a POSA reflecting

that corrosion resistance is not an absolute, but instead a matter of degree based

upon individual circumstances.  *See* A15042, 190:15-16; *Lazare Kaplan Int'l, Inc.*

*v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010) (testimony on

proper test for infringement a factual question for the jury).  Hayward consistently

has maintained the position that the material from which the Accused Products'

tubesheets were made meets the "corrosion resistance" limitation.  Therefore,

Hayward never expressly adopted a position "equating corrosion resistance with

stainless steel" and, consequently, never abandoned such a position.  *See* PBr., 48.

Pentair further ignores the clear teaching of the specification that copper is a

corrosion resistant material even though it corrodes.  A126, 8:42-43.  Rather,

Pentair inaccurately cites the specification for the proposition that a corrosion

_____

[4] "Corrosion proof" does not require an accepted expert definition.  *See* PBr. 50
n.15.  The meaning of this term is obvious to a POSA, ███████████████████████
████████████████████████████████████████████████

CONFIDENTIAL MATERIAL REDACTED

resistant material must "avoid" corrosion.  *See* PBr., 44.  Pentair also incorrectly asserts that "[t]he '804 patent clearly and unequivocally disavows any construction of 'corrosion resistant material' that could encompass carbon steel" without citation to the specification or any other authority.  *Id*.  As discussed above, there is no such disavowal of cast iron, let alone carbon steel.  ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████  Finally, and again without support, Pentair improperly attempts to exaggerate the corrosion resistance similarity between cast iron and carbon steel into an "equivalent corrosion resistance profile" in a misguided effort to improperly resolve a factual dispute and discount carbon steel as a corrosion resistant material.  PBr., 49.

When its position is stripped of all the inconsistencies and unsupported contentions, Pentair implicitly concedes that the District Court improvidently restricted Hayward from pursuing its infringement position that the Accused Products' carbon steel tubesheets meet the "corrosion-resistance" limitation of

---

[5] Tellingly, Pentair never contends that any of the tubesheet photographs in its brief depict anything other than superficial surface corrosion that had no impact upon the functioning of the tubesheets.  *See* PBr., 45-47.

*CONFIDENTIAL MATERIAL REDACTED*

claim 46, and that Hayward had created a genuine issue of material fact on this matter before the District Court.

## III. THE ACCUSED PRODUCTS INFRINGE THE COMBUSTION CHAMBER LIMITATIONS

The "combustion chamber" is the place "where the fuel is burned," as the District Court determined.  A18.7.  The court below, however, misapplied this construction to the undisputed facts.  Pentair does not defend the District Court's analysis, but rather it challenges the construction in a misguided attempt to import limitations from the preferred embodiment.   But even Pentair's new flawed construction is infringed by the Accused Products.  Accordingly, the unavoidable conclusion is that the "combustion chamber" limitations are infringed.

### A.    The District Court Correctly Construed Combustion Chamber

Pentair concedes that "combustion chamber" has its ordinary meaning, PBr., 52, █████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████  As the District Court found, these

admissions "accord with the language of the claim, which requires "'a combustion chamber within said housing wherein *hydrocarbon fuel is burned*.'"  A18.7-18.8 (emphasis added).

Pentair's improper attempt to read a "separate structure" into the claims — namely the "freestanding combustion chamber assembly" of Figure 4[6] — violates the rule against importing limitations from the preferred embodiment.  *See* A18.7. It is also contrary to claim differentiation because, unlike the asserted claims, claims 22-24 expressly provide for "a freestanding box-shaped combustion chamber."  *See* A128.

Furthermore, Pentair does not dispute that combustion gases from the combustion chamber pass over and between — *i.e.*, are in communication with — the tubes in the heat exchanger.  A10728, 94:18-22; A19977-98 ¶ 98.  Contrary to Pentair's claims, the combustion chamber is not *within* the heat exchanger itself. Combustion takes place in the separate annular space between the burner and the inner perimeter of the heat exchanger, not inside the conduits or the header.  PBr., 54 ("combustion occurs between the burner and the conduits").

---

[6] Pentair's annotated Figure 2, PBr. 8, misrepresents the specification because item 48 is identified as the "free-standing combustion chamber assembly," not a "combustion chamber."  *See* A125 at 5:38-39.

*CONFIDENTIAL MATERIAL REDACTED*

**B.    The Accused Products Have A Combustion Chamber Under Any Construction**

The District Court misapplied its claim construction to the undisputed facts to erroneously deny summary judgment of infringement.  Not only does Pentair not defend the District Court's reasoning, it offers an alternative construction that *also is infringed*.



Moreover, even if, *arguendo*, the Court were to adopt Pentair's proposed construction of "combustion chamber,"  the Accused Products would *still* infringe. Like the "combustion chamber assembly" of the '804 patent, the "one piece metal combustion chamber assembly" of the MasterTemp and Max-E-Therm heaters is "a chamber that confines the combustible elements during combustion."  PBr., 52.

CONFIDENTIAL MATERIAL REDACTED

████████  Nothing in the '804 patent, or Pentair's proposed construction, requires combustion to take place *everywhere* within the "chamber," let alone at the chamber walls.  Likewise, the claims do not rule out other structures, such as the burner or heat exchanger, from being situated *within* the "combustion chamber" so defined.

Likewise, the mere fact that the walls of the "one piece metal combustion chamber assembly" also operate as a flue collector does not prevent them from encompassing or confining the combustion chamber.  Nothing in the '804 patent necessitates that the "combustion chamber assembly" serve only one function, and,

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

Finally, either construction is entirely consistent with Hayward's infringement contentions.  The aptly named "one piece metal combustion chamber assembly" from the infringement contentions is the vessel that contains the space where combustion takes place.  Thus, regardless of whether "combustion chamber" is defined as the "space" or the "vessel that contains the space," Pentair's combustion chamber assembly fits the bill.

## IV. THE "APERTURE" AND "SPACED CONDUITS" LIMITATIONS ARE INFRINGED

### A.    The Accused Products Infringe The Aperture Limitation

The District Court properly found that the Accused Products have conduits that are "attached proximate" and "in communication with" the apertures of the tubesheet.  This limitation encompasses a standard conduit-tubesheet interface, including the interface depicted in Figure 5 and used by the Accused Products:



*Excerpt from Fig. 5*

A18.14  The conduits pass through the holes in the tubesheet (*i.e.*, the apertures) and protrude into the header.  A119; A19919-20 ¶¶ 20-21.  The conduits are then attached to the tubesheet, for example by swaging (pressure fitting) them against the aperture walls in the tubesheet.  A15703-03 ¶ 33; A10725, 62:1-3.  As such, the conduits are physically in communication with the apertures as they pass through the holes in the tubesheet.  Also, water traveling through the conduits is in fluid communication with the apertures as it passes through the hole in the tubesheet. A19932 ¶ 44; A10725, 64:16-65:4.

CONFIDENTIAL MATERIAL REDACTED

The District Court correctly rejected Pentair's proposed construction of "communication" as improperly importing a so-called "wet tubesheet" design into the claim.  A18.14.  Pentair, however, concedes that "communication" should be given its ordinary meaning, ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████  Just because other instances of this broad term are *satisfied* by fluid communication does not arbitrarily restrict the ordinary meaning of this term.  Likewise, the ordinary meaning of "communication" is consistent with the "attached proximate" limitation, as, for example, a conduit need not be "attached" to pass through the aperture.

In any event, the Accused Products also have conduits that are in "fluid communication" with the apertures in the tubesheet, as the water in the Accused Products passes through the holes in the tubesheet.  A19932 ¶ 44; A10725, 64:16-65:4.  Nothing in the patent requires that fluid be *outside* the conduit when it passes through the aperture or let alone touch the aperture wall.  Indeed, such requirements would improperly read Figure 5 out of the patent altogether.  A18.15.  Moreover, the mere *theoretical possibility* that one could discharge water into the flanges of Figure 7 is not the "highly persuasive evidentiary support" needed to diverge from the preferred embodiment, *Vitronics Corp. v. Conceptronic, Inc.*, 90

27

F.3d 1576, 1583 (Fed. Cir. 1996), especially because it contravene the flanges' express purpose of providing *more*, rather than less, tube-tubesheet contact area. A126, 8:47-53.

### B.    The Accused Products Have Spaced Conduits

Pentair concedes that the combustion gases in the Accused Products pass through the heat exchanger in the space between the conduits, A10728, 94:18-22, thereby establishing as a matter of law that the Accused Products have a "plurality of spaced … conduits."  As such, the District Court's finding of infringement on this limitation must be upheld.

In the Accused Products, the heat exchanger tubes are composed of the (1) conduits through which the fluid to be heated may pass, and (2) external "fins" which are used to increase the surface area to facilitate heat transfer.  A9346.  As illustrated below,[7] the tubes are "stacked" so that the fins, which may touch at their tips, hold the conduits apart to maintain the necessary spacing for proper flow of combustion gases.  A10786, 195:16-196:18.

---

[7] This demonstrative simulates the "stacked" configuration by assembling two copies of Pentair's cross sectional image.  A14783.  It is consistent with testimony of record.  *See* A10953-55; A14823; A15416; A19293 (no objection from Pentair).



The District Court properly construed this limitation to require "at least two, heat-conductive conduits that are spaced relative to each other," which merely requires some space between the conduits. A28-A29. Neither "spaced" nor "conduit" requires further construction beyond the rejection of Pentair's attempt to import an unwarranted "zero-contact" limitation, which would preclude any contact between tubes, including the fins. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) (construction required "only to the extent necessary to resolve the controversy").

As the District Court aptly demonstrated, the specification does not support Pentair's zero-contact theory. A28-29. Moreover, since the ordinary meaning of "spaced" merely requires some open gap, which does not rule out some contact, it

also would have been impermissible to import a zero-contact limitation. Pentair's construction also fails because the fins are not "conduits," which the claims define as the space "through which fluid to be heated may pass." A130, 16:4-5. No "fluid to be heated," *i.e.*, pool water, passes through the fins. PBr., 63 (fin photos).

Finally, Pentair's position fails because it conflates the conduit (*i.e.*, the fluid channel) with the physical structure of the tube and fins. Pentair's annotated Figure 2, PBr., 8, inaccurately identifies item 70 as "finned conduits" when the specification clearly calls them "finned tubes." A125 at 6:32–33. Moreover, Pentair's purported claim differentiation argument actually undermines its own construction. Claims 1, 23, 24, 35, and 39 require a "plurality of tubes" — *not* a "plurality of … spaced *conduits* through which the fluid to be heated may pass." This confirms the tube/conduit distinction, including that the open gap need not be between the tubes, let alone the fins, but only between the conduits.

## V.    THE DISTRICT COURT INCORRECTLY BARRED PRE-SUIT DAMAGES UNDER THE MARKING STATUTE

The parties do not dispute that: (a) Hayward consistently and comprehensively marked its H Series, IDH Series, and IDL Series heaters with the '804 patent during the entire period from 1996-2007; (b) during this eleven-year period, Pentair and Sta-Rite were provided notice *in rem* of the '804 patent while they developed and launched each of the Accused Products, satisfying the intent of

the marking statute; and (c) in July 2007, long after each of the Accused Products was introduced to the market, Hayward launched its new FD Series heaters marked with two newer patents, but inadvertently without the '804 patent.  A20152-56 ¶¶ 167-73; A13424-28; A15007.    Under these circumstances, there has been "substantially consistent and continuous" marking of the '804 patent such that Hayward should not be barred from pre-suit damages after July 2007.  *See Am. Med. Sys., Inc. v. Med. Eng'g Corp.,* 6 F.3d 1523, 1537 (Fed. Cir. 1993).

By July 2007, Hayward's marking of its heater products undeniably had served its statutory purpose as to incorrigible infringer Pentair.  Despite Hayward's consistent and continuous marking of its relevant heater products with the '804 patent for eleven years, Pentair deliberately elected to acquire, develop, create, market and sell four infringing heater products.  Pentair clearly was not dissuaded in the least by such marking, and Hayward's inadvertent failure to mark its FD Series heaters after July 2007 would have had no positive incremental impact upon Pentair's conduct.  By that time, the bell already had been rung, repeatedly.

Accordingly, this Court should take "a practical common sense approach … when dealing with issues of compliance for the marking provisions of § 287," *Metrologic Instruments, Inc. v. PSC, Inc.*, No. 99-4876, 2004 WL 2851955, at *21 (D.N.J. Dec. 13, 2004), and not penalize Hayward for an inadvertent, after-the-fact

31

CONFIDENTIAL MATERIAL REDACTED

lack of marking that would have been futile in modifying Pentair's serial infringing behavior.

## VI.   THE   DISTRICT   COURT'S   FINDING   OF   NO   WILLFUL INFRINGEMENT SHOULD BE REVERSED

Pentair does not contest that the District Court's grant of summary judgment of no willful infringement was based solely upon a finding that "Pentair did not disregard an objectively high likelihood that its actions constituted infringement of a valid patent because at least its written description invalidity defense was objectively reasonable."   A18.36.   Accordingly, this ruling must fall as a consequence of finding that Pentair's written description invalidity defense is objectively unreasonable.   *See* Section I, *supra*, and HBr., 29-46.   The District Court made no findings concerning the subjective *Seagate* prong, and Pentair's representation that Hayward presented no evidence of knowledge of the '804 patent by Pentair personnel is incorrect.[8]

---

[8] ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████   *Potter Voice Techs., LLC v. Apple Inc.*, 24 F. Supp. 3d 882, 887 (N.D. Cal. 2014) (knowledge of employee involved in patent prosecution imputed to alleged infringer); *Cloud Farm Assocs., L.P. v. Volkswagen Grp. of Am., Inc.*, No. CA 10-502-LPS, 2012 WL 3069390, at *3-4 (D. Del. July 27, 2012) (knowledge of outside counsel of predecessor company sufficient to allege knowledge).

## **CONCLUSION**

For the foregoing reasons, this Court should reverse the District Court's judgments to the extent they are adverse to Hayward and remand to the District Court for further proceedings consistent with this Court's rulings.

Dated: August 3, 2015

/s/ Lee Carl Bromberg
Lee Carl Bromberg
Lori Jane Shyavitz
Keith E. Toms
Amy J. Tindell
McCARTER & ENGLISH, LLP
265 Franklin St.
Boston, MA 02110
Tel: (617) 449-6500
Fax: (617) 607-9200

Scott S. Christie
Matthew A. Sklar
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Tel: (973) 622-4444
Fax: (973) 624-7070

*Counsel for Defendants-Appellants Hayward Industries, Inc. and Hayward Pool Products, Inc.*

33

# United States Court of Appeals
## for the Federal Circuit

*Pentair Water Pool and Spa v. Hayward Industries, Inc.*, No. 2015-1488

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by MCCARTER & ENGLISH, LLP, Attorneys for Appellants to print this document.  I am an employee of Counsel Press.

On **August 3, 2015,** counsel has authorized me to electronically file the foregoing **Reply Brief of Defendants-Appellants Hayward Industries, Hayward Pool Products, Inc., (Confidential and Non-Confidential)**with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

> Mark Boland
> Renita S. Rathinam
> Raja N. Saliba
> John B. Scherling
> Grant S. Shackelford
> Sughrue Mion, PLLC
> 2100 Pennsylvania Avenue, NW,
> Suite 800
> Washington, DC 20037
> 202-293-7060
> mboland@sughrue.com
> rrathinam@sughrue.com
> rsaliba@sughrue.com
> jscherling@sughrue.com
> gshackelford@sughrue.com

Additionally, the confidential brief will be served via email and 2 copies sent via Express Mail to the above listed counsel on this date.

34

Upon acceptance by the Court of the e-filed document, six confidential paper copies will be filed with the Court within the time provided in the Court's rules.

August 3, 2015                                    /s/ Robyn Cocho
                                                 Robyn Cocho
                                                 Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

  X   The brief contains  6,881  words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

_____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

  X   The brief has been prepared in a proportionally spaced typeface using MS Word 2013  in a 14 point Times New Roman font or

_____ The brief has been prepared in a monospaced typeface using _____ _____in a ___ characters per inch_____ font.

August 3, 2015                /s/ Lee Carl Bromberg
Date                              Lee Carl Bromberg
                                   McCARTER & ENGLISH, LLP
                                   *Counsel for Defendants-Appellants*
                                   *Hayward Industries, Inc. and*
                                   *Hayward Pool Products, Inc.*